IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IRON WORKERS ST. LOUIS DISTRICT COUNCIL PENSION TRUST; IRON WORKERS ST. LOUIS DISTRICT COUNCIL ANNUITY TRUST; and IRON WORKERS ST. LOUIS DISTRICT COUNCIL WELFARE PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> BUMPY'S STEEL ERECTION, LLC, <br><br> Defendant. | Case No. 20-MC-00004-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

The Court previously granted Plaintiffs' Motion for Sanctions. (Doc. 24). However, the Court ordered the parties to provide additional briefing on (1) Plaintiffs' allegation that Ashanti Mitchell further transferred $11,376.15 in funds in violation of the Alias Citation (Doc. 28, p. 7); and (2) reasonable attorneys' fees and costs for bringing the contempt motions. Plaintiffs filed their brief as to the disputed amount on April 18, 2022. Bumpy's Steel timely responded a week later. Plaintiffs timely submitted a fee petition to the Court on May 2, 2022; Bumpy's Steel did not respond. For the reasons set forth below, Mitchell is sanctioned and required to pay the sum of $74,976.15. Mitchell is also ordered to pay Plaintiffs' attorneys' fees and costs in the amount of $7,287.70.

## BACKGROUND

On December 4, 2019, a default judgment was entered against Bumpy's Steel Erection, LLC, in the amount of $685,427.85 in the United States District Court for the Eastern District of Missouri. *See Iron Workers St. Louis District Council Pension Trust et al v. Bumpy's Steel Erection LLC*, 4:18-cv-2032 (E.D. Mo. Dec. 4, 2019). On February 3, 2020, Plaintiffs registered the judgment in the Southern District of Illinois. (Doc. 2). On April 27, 2020, the Clerk of Court issued an Alias Citation in Supplemental Proceedings to Discover Assets ("Alias Citation") to Bumpy's Steel. (Doc. 8). The Court later granted Plaintiffs' motion to serve the Alias Citation via mail and by posting copies of it at the residential address of Ashanti Mitchell ("Mitchell"), the sole manager of Bumpy's Steel. (Doc. 10). The Alias Citation states as follows:

> **YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to BUMPY'S STEEL ERECTION LLC, whether held individually or jointly, or to which it may be entitled or which may be acquired by or become due to it and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to it, until further order of the Court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the Judgment.**

(Doc. 8).

Despite the Alias Citation, on May 28, 2020, Mitchell sold property belonging to Bumpy's Steel for $50,000—approximately $14,000 less than the value of the property[1]—

---

[1] According to a May 2020 appraisal report, the property at issue was valued at approximately $63,600. (Doc. 24-3).

Page **2** of **12**

to her mother. (Doc. 24-4). Mitchell used the $50,000 to pay Midland States Bank $41,244[2] —while retaining $3,454.[3] (Doc. 27, p. 3).

On November 16, 2020, Plaintiffs filed a motion for writ of body attachment as to Mitchell because Bumpy's Steel failed to appear or comply with the Alias Citation requiring production of certain documents. (Doc. 18). In late November and early December 2020, Mitchell and Bumpy's Steel retained counsel and produced records reflecting the sale of the property at issue. (Doc. 22). On January 29, 2021, Mitchell submitted to a judgment debtor examination. (Doc. 28, p. 2). Bumpy's Steel also produced more than 177 pages of bank records, sales records, and other documents regarding the sale of the property. (*Id.*).

Plaintiffs also moved for sanctions against Mitchell asserting Mitchell willfully violated the terms of the Alias Citation. (Doc. 24, p. 4). Bumpy's Steel filed responses to Plaintiffs' Motion for Sanctions on January 15, 2021. (Doc. 27). On May 24, 2021, Magistrate Judge Sison issued the Report and Recommendation. (Doc. 29). On April 11, 2022, the Court adopted in part and modified in part Magistrate Judge Sison's Report and Recommendation. (Doc. 31). The Court overruled all of Bumpy's Steel's Objections (Doc. 30), and granted the Motion for Sanctions. The Court explained it was to award Plaintiffs an amount to be determined after additional briefing on (1) the $11,376.15 at

---

[2] Bumpy's Steel borrowed money from Midland States Bank in order to purchase the property at issue. (Doc. 27, p. 2). In April 2020, Midland States Bank filed a lawsuit to foreclose on the property. (*Id.*).

[3] Notably, Mitchell did not deposit the $3,454 into the operating account belonging to Bumpy's Steel, but split the proceeds with her brother. (Doc. 28, p. 3). The remaining $5,302 was prorations, taxes, title charges, and recording fees.

issue (as set forth in footnote 4 in Doc. 31); and (2) reasonable attorneys' fees and costs for bringing the contempt motions.

## DISCUSSION

I.  **The Additional $11,376.15**

A citation to discover assets prohibits a party from transferring assets in its possession or that later come into its possession. *See* 735 ILCS § 5/2–1402; *see also W. Bend Mut. Ins. Co. v. Belmont State Corp.*, 2010 WL 5419061, at *10–11 (N.D. Ill. Dec. 23, 2010) ("Regardless of [third party citation respondent's] beliefs about the priority of its lien on the cash deposits, [third party] was required to hold [defendant's] cash deposits until the Court could adjudicate the interests of the creditors"); *In re Weitzman*, 381 B.R. 874, 881 (Bankr. N.D. Ill. 2008) ("The prohibition is in place to account for and preserve the judgment debtor's assets until the court decides whether those assets should be used to pay down the judgment"); *Kirchheimer Bros. Co. v. Jewelry Mine, Ltd.*, 426 N.E.2d 1110, 1113 (Ill. App. Ct. 1981) ("A restraining provision under this section does not adjudicate any rights in the property held by the party to whom it is addressed; it merely requires that the party hold property which is subject to the reach of the judgment creditor in status quo until the judgment creditor's rights can be determined"). "[I]t can be said that a prima facie case to enter the judgment remedy against a third-party citee includes, at least: a citation issued in furtherance of an enforceable judgment, proper service of the citation on the third-party citee, and a transfer that violated the prohibition." *In re Weitzman*, 381 B.R. at 882.

Bumpy's Steel argues that "Plaintiffs have failed to meet their burden that they are entitled to an additional $11,376.15 due to Ms. Mitchell's violation of the Citation." (Doc. 33, p. 2). Bumpy's Steel asserts that Plaintiffs failed to attach the "relevant account statements to their Brief." (*Id.*). "Instead, Plaintiffs attach one bank statement to their Brief which shows $1,885.70 was transferred from Defendant's account in May of 2020." (*Id.*). Also, Bumpy's Steel points out that "Plaintiffs allude to admissions allegedly made by Ms. Mitchell during her deposition but failed to attach the transcript or cite to any specific testimony." (*Id.*).

The problem is Plaintiffs provided bank records that on May 5, 2020—the day prior to the Alias Citation being posted at Bumpy's Steel business address and Mitchell's residence—Bumpy's Steel had $11,376.15 in its operating account with Midwest BankCentre. (Docs. 28 & 32). Then Plaintiffs noted that "[a]ccording to the records, and testimony of Mitchell at the citation examination, the payments made included payments to Public Storage, which were unrelated to the operation of Bumpy's, and payments to Travelers Insurance for automobile insurance on her personal vehicle." (Doc. 28, p. 3; Doc. 32, p. 2).[4]

Mitchell's testimony makes clear that she transferred the $11,376.15 in violation of the citation:

> Q: So I guess regardless of whether you saw it or not, the citation was posted at your house, and at that time there was $11,376 in the account at Midwest Bank, correct?

---

[4] While Plaintiffs did not cite to Mitchell's specific testimony, Plaintiffs' brief on April 18, 2022 noted "Plaintiff/Judgment Creditors have now ordered the transcript and will supplement the record with the transcript once received." (Doc. 32, p. 2).

> A. Yes.
>
> Q. That's all gone now, correct?
>
> A. Yes.

(Doc. 35-2, p. 40). Further, the additional bank records from June 2020 through October 2020 show that Mitchell violated the citation. (Doc. 35-1).

This is not a situation where Bumpy's Steel had no notice of Plaintiffs' claims or the access to the evidence used against it. Plaintiffs' evidence came directly from the 177 pages of bank records Bumpy's Steel provided Plaintiffs before the judgment debtor examination. (Doc. 31, p. 3). Moreover, Plaintiffs' evidence included Mitchell's testimony from the citation examination. Plaintiffs even referred to the payments to Public Storage and Travelers Insurance in two different briefs—and Bumpy's Steel had the opportunity to address whether it further violated the citation.

Rather than addressing whether it transferred the $11,376.15 in violation of the citation, Bumpy's Steel attempts to put an additional burden on Plaintiffs without pointing to a case or statute for support.[5] The Court has found at least one Illinois case, however, where the trial court entered judgment without an evidentiary hearing—and after a plaintiff listed other payments for the first time in its reply brief that it contended

---

[5] Similarly, Bumpy's Steel argues that "Plaintiffs' request that this Court enter an Order requiring Ms. Mitchell to pay the sum of $74,976.15 to Plaintiffs within 10 days should be denied." (Doc. 33, p. 3). The Court has not found a case or statute supporting this argument. Instead, in *Int'l Ass'n of Heat & Frost Insulators Loc. 17 Pension Fund v. Nw. Mech. Insulation Co.*, 2019 WL 1002607, at *5 (N.D. Ill. Mar. 1, 2019), the court ordered that "within ten days of being served a copy of this order citation [third-party] citations respondents . . . shall deliver certified funds made payable to [the] [Plaintiffs], to plaintiffs' attorney c/o William M. Blumenthal, Jr. at Johnson & Krol, LLC, 311 South Wacker Drive, Suite 1050, Chicago, Il 60606 . . . ."

violated that citation. *See McGinley Partners, LLC v. Royalty Properties, LLC*, 185 N.E.3d 722, 736–37 (Ill. App. Ct. 2021) (noting although plaintiff listed other payments that it contended violated the citation "for the first time in its reply brief, [defendant's] claim overlooks the fact that plaintiff identified each of the categories of payments in its motion—only the calculations of the amounts were added to the reply brief. Moreover, the record does not show that [defendant] objected to the filing of this reply or sought to file a surreply, nor does it show that [defendant] requested an evidentiary hearing"). Besides, it makes little sense to require Plaintiffs to seek leave to include the full transcript and the additional bank records from June 2020 through October 2020 when post judgment proceedings "are meant to be swift, cheap, [and] informal[.]" *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993). Accordingly, the Court finds that Mitchell further violated the Alias Citation, and the Court increases the amount Mitchell is required to pay from $63,600 to $74,976.15.

## II.     *Amount in Attorneys' Fees to Award Plaintiffs*

To calculate the fee, the district court generally begins with the "lodestar"—the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "Although the lodestar yields a presumptively reasonable fee . . . the court may nevertheless adjust the fee based on factors not included in the computation," such as the time and labor required, the novelty or difficulty of the case, the degree of the success achieved, the experience and ability of the attorneys, the adequacy of the documentation of the hours, and whether appropriate billing judgment was used. *Id.* at 553.

"The party seeking an award of fees" must "submit evidence supporting the hours worked and rates claimed" in support of the lodestar. *Hensley*, 461 U.S. at 433. "[I]f the lawyers fail to carry that burden, the district court can independently determine the appropriate rate." *Montanez*, 755 F.3d at 553. "As to the reasonableness of the hours expended, when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000). "Whichever option the district court chooses, it is required to 'provide a concise but clear explanation of its reasons for the fee award' that is sufficient to permit appellate review. *Id.* (citing *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 658 (7th Cir. 1985), quoting *Hensley*, 461 U.S. at 437).

i. *Hours Worked*

The hours worked component of the lodestar must exclude hours not reasonably expended, including "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434. In determining whether hours are reasonable, the Court must determine whether the task would normally be billed to a paying client and whether certain tasks could easily be delegated to non-professional assistants. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999).

Plaintiffs' documentation includes hours worked and explanations for the amounts billed. (Doc. 34). Plaintiffs itemized the 27.47 hours of time spent preparing the motion for sanctions. Notably, they include time spent preparing the additional briefing

on the $11,376.15. For the most part, the Court does not have an issue with this time because Plaintiffs did not have the 177 pages of bank records and Mitchell did not submit to a judgment debtor examination until after Plaintiffs filed the motion for sanctions. But Plaintiffs' time on July 7, 2021, and February 4, 2022, is unreasonable because the attorneys discussed the motion for sanctions, but the last filing in the matter was Bumpy's Steel's objections to the Report and Recommendation on June 7, 2021. After removing the time on July 7, 2021, and February 4, 2022, the Court finds that 26.96 hours were reasonably expended.

    ii.    *Hourly Rates*

A reasonable hourly rate is the local market rate for the attorney's services. *Montanez*, 755 F.3d at 553. "The best evidence of an attorney's market rate is his or her actual billing rate for similar work." *Id.* (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639-40 (7th Cir. 2011)). If that figure is not available, a court also may rely on "evidence of rates charged by similarly experienced attorneys in the community" for similar work and evidence of fee awards the attorney has received in similar cases. *Id.* (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012)).

William Blumthal claims his hourly rate was $265. Jeffrey Krol claims his hourly rate was $285. Joseph Mallon claims his hourly rate was $285. Lucas Habeeb claims his hourly rate was $240. Suzanne Dyer claims her hourly rate was $275. The Court finds these rates reasonable based on of rates charged by similarly experienced attorneys in the community for similar work. *See e.g., DirecTV, LLC v. Preston*, 2017 WL 2192966, at *3 (C.D. Ill. May 18, 2017) (noting that "the Court carefully analyzed fee awards in the Central

District of Illinois to settle on appropriate rates for cases of similar complexity, determining that it would award $300 for partner work, $200 for associate work, and $75 for paralegal work"). Also, their hourly rates are reasonable based on their actual billing rate for similar work. For instance, in 2020, William Blumthal's hourly rate was $250, Lucas Habeeb's hourly rate was $230, and Joseph Mallon's hourly rate was $285. (Doc. 16, pp. 4-5).

    iii.    *Lodestar Calculation*

For the reasons set forth above, the Court has calculated the total lodestar as follows:

| Attorney | Requested Hours | Disallowed Hours | Total Hours | Rate | Total Award |
|---|---|---|---|---|---|
| William Blumthal | 19.59 | 0.17 | 19.42 | $265 | $5,146.30 |
| Jeffrey Krol | 1.52 | 0 | 1.52 | $285 | $433.20 |
| Joseph Mallon | 4.36 | 0.34 | 4.02 | $285 | $1,145.70 |
| Lucas Habeeb | 1 | 0 | 1 | $240 | $240.00 |
| Suzanne Dyer | 1 | 0 | 1 | $275 | $275.00 |
| Total | 27.47 | 0.51 | 26.96 | - | $7,240.20 |

The Supreme Court has recognized that the "'product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney's fee . . . ." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (quoting *Hensley*, 461 U.S. at 434). Upon determining the lodestar amount, however, a court may adjust the award in light of such factors as the degree of success, awards in similar cases, the novelty of the case, and the relationship between the fees incurred and the damages awarded. *See Hensley*, 461 U.S. at 436. "Precision is impossible in such calculations, and the district court is entitled to considerable discretion

in arriving at an award that it deems reasonable." *Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010). Nevertheless, the district court must provide some explanation justifying its decision. *Id*.

This Court has already considered factors like the customary fees and whether the fee is fixed or contingent in determining the number of hours and hourly rates. The Court also notes that the other factors favor of not decreasing the award. The attorneys at Johnson & Krol, LLC, were not overly combative in this case. *Compare ADT Sec. Servs., Inc. v. Lisle Woodridge Fire Prot. Dist.*, 86 F. Supp. 3d 857, 870 (N.D. Ill. 2015) (reducing attorneys' fee award by 10% to reflect "the overly contentious manner in which some aspects of this case were litigated"). As such, this Court will not make a reduction to the lodestar amount. Johnson & Krol, LLC, is awarded $7,240.20. The Court declines to add interest to these amounts.

## Conclusion

For these reasons, Ashanti Mitchell is sanctioned and required to pay the sum of $74,976.15, which is itemized as follows:

1) **$63,600.00** for sale of the property located at 113 North 88th Street in Centreville, Illinois; and

2) **$11,376.15** for transfer of funds from Bumpy's operating account.

Payment to the Trust Funds shall be made within **10 days** of the Court's Order. Further, Plaintiffs are entitled to a total of **$7,240.20** in attorneys' fees and **$47.50** in costs for

preparing and bringing this motion.[6] Ashanti Mitchell is **ORDERED** to pay Plaintiffs' attorneys' fees and costs in the amount of **$7,287.70**.

    **IT IS SO ORDERED.**

    **DATED:  July 11, 2022**

                                                                   */s/ Nancy J. Rosenstengel*
                                                                   **NANCY J. ROSENSTENGEL**
                                                                   **Chief U.S. District Judge**

---

[6] Again, Bumpy's Steel failed to respond to Plaintiffs' attorney fees and costs within 14 days. Even if Bumpy's Steel objected to Plaintiffs' costs, the Court would deny any argument as it would be preposterous to force Plaintiffs to explain the $47.50 in costs considering the high cost of attorney time. *Cf. Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 698 (7th Cir. 2014) (acknowledging that "[n]o sensible legal system requires parties to waste $60 of lawyers' time to explain spending $6 on making a copy of something").